RENDERED:  OCTOBER 11, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0324-ME

KIMBERLY ANN SMITH                                                                          APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE DENISE D. BROWN, JUDGE
ACTION NO. 24-D-500429-001


SHANNON LYNNE HOWELL                                                                      APPELLEE



OPINION
REVERSING AND VACATING

** ** ** ** **

BEFORE:  CETRULO, ECKERLE, AND GOODWINE, JUDGES.

CETRULO, JUDGE:  This is an appeal from the entry of an interpersonal

protective order ("IPO") against Kimberly Ann Smith ("Smith").  On February 10,

2024, Smith's cousin, Shannon Howell ("Howell") filed for a temporary protective

order which was granted pending a hearing.  On February 14, 2024, the parties

appeared before the Jefferson Family Court for the hearing.  Before considering

any proof as to the nature of the allegations, the family court confirmed the parties

were cousins who did not reside together, and there was no special relationship between them. The court then advised the parties it lacked jurisdiction to enter any type of protective order. The court advised Howell she could pursue other avenues, but she would have to dismiss the action for an IPO.[1]

According to Smith's brief, the parties were leaving the building when they were stopped by the deputy sheriff and asked to return to the courtroom.[2] On the record, the judge indicated she had "found an exception to jurisdiction" because Howell had alleged "stalking" which does not require a marital, close biological, or dating relationship for entry of an IPO. The court then proceeded to conduct a hearing on Howell's petition.

The judge referenced the petition which was read into the record in the prior hearing, and then invited both parties to testify. Howell testified there had been issues between her and Smith since 2021. She claimed Smith frequently drove by her home and texted and called her. However, Howell stated she had blocked Smith on her phone in September 2023. She stated she had multiple texts

---

[1] Unlike a domestic violence order ("DVO"), an IPO is available to victims of dating violence or abuse, sexual assault, or stalking without having to show a close familial relationship or sexual relationship with the perpetrator. *Smith v. Doe*, 627 S.W.3d 903, 909-10 (Ky. 2021).

[2] Appellee chose not to file a brief on appeal. Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3) provides this Court with options to impose penalties on the appellee and further requires us to primarily rely upon the appellant's statement of the facts. *See Hawkins v. Jones*, 555 S.W.3d 459 (Ky. App. 2018). Our review is certainly constrained when an appellee does not respond to the appeal by filing a brief. However, we have elected to carefully review the entire record on appeal and address the merits.

-2-

from Smith which she had saved, but those were not shared or read into the record. The petition alleged Howell had kept all threatening voicemails and texts. However, at the hearing, she testified she had only saved one, a call on February 4. That call resulted in the filing of the petition. The judge asked Howell to play the voicemail which did contain two threats to Howell by Smith. The message was laced with profanity and hostility and a threatening tone.

Smith then testified. She was tearful and remorseful, but did admit it was her voice on the message. She also admitted she had made two prior calls to Howell when family members had died. She denied ever riding by Howell's home. No other witnesses testified.

After hearing from the parties, the family court set aside the prior dismissal and entered an IPO against Smith for three years, stating the "court heard proof and finds by a preponderance of the evidence that stalking has occurred and is likely to occur in the future."[3] This appeal followed.

**STANDARD OF REVIEW**

The standard of review for factual determinations is whether the finding of the family court was clearly erroneous. *Reichle v. Reichle*, 719 S.W.2d

---

[3] The court did not check the boxes on the form reflecting any supplemental findings but did handwrite some notes on the docket sheet regarding Smith's testimony that there were texts sent and that Smith had driven by her home. She also *sua sponte* added Smith's father, (who was in the courtroom but did not testify), as an additional protected person, even though that was not supported by any evidence of stalking against him.

442, 444 (Ky. 1986). Findings are not clearly erroneous if "supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). "'[S]ubstantial evidence' is '[e]vidence that a reasonable mind would accept as adequate to support a conclusion' and evidence that, when 'taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men.'" *Id.* (footnotes and citations omitted). When a party appeals from the entry of an IPO, we cannot disturb the findings of the family court unless they are clearly erroneous, *i.e.*, not supported by substantial evidence. However, we review questions of law under the non-deferential *de novo* standard. *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (citation omitted). This appeal raises both an issue of statutory interpretation and sufficiency of the evidence.

Pursuant to Kentucky Revised Statute ("KRS") Chapter 456, the family court may render an IPO only if it finds by a "preponderance of the evidence that . . . stalking has occurred and may again occur . . . ." KRS 456.060(1). The family court stated that it so found. However, the statute sets forth the definition of stalking, and we must turn to that language to determine if the statutory elements have been met.

**LEGAL ANALYSIS**

A person may file a petition for an IPO if they are a victim of stalking.

KRS 456.010(8) defines stalking as conduct prohibited by KRS 508.140 and KRS 508.150. Those provisions refer, respectively, to the criminal offenses of first and second-degree stalking. There was no basis for a determination of first-degree stalking because those elements did not exist.[4] Thus, we are looking solely at whether the elements of second-degree stalking were present. This Court previously stated:

> for an individual to be granted an IPO for stalking, he or she must at a minimum prove by a preponderance of the evidence that, an individual intentionally engaged in two or more acts directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again.

*Halloway v. Simmons*, 532 S.W.3d 158, 162 (Ky. App. 2017).

In turn, KRS 508.150 must be read in combination with KRS 508.130, which defines stalking as follows:

> (1) (a) To "stalk" means to engage in an intentional course of conduct:
>
>    1. Directed at a specific person or persons;
>
>    2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and
>
>    3. Which serves no legitimate purpose.

---

[4] KRS 508.140(b) contains aggravating circumstances that heighten the crime to stalking in the first degree. This case contains none of those aggravating circumstances.

-5-

(b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

(2) "Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose.

KRS 508.130.

KRS 508.130 makes it clear that stalking entails "an intentional course of conduct," and it defines course of conduct as a "pattern of conduct" consisting of at least two acts "evidencing a continuity of purpose." Additionally, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death. *Halloway*, 532 S.W.3d at 162 (citing KRS 508.150).

In *Sewell v. Sweet*, 637 S.W.3d 330 (Ky. App. 2021), we ruled a family court's finding that stalking had occurred and was likely to occur again was not supported by substantial evidence. *Id.* at 336. In that instance, there had been "no threats, implicit or explicit," to support the victim being in fear of physical injury. *Id*. Although the perpetrator had visited the petitioner's "place of employment on numerous occasions", the evidence did not indicate behavior sufficient to amount to a threat with the intent to place one in reasonable fear of serious injury. *Id*.

In *Taylor v. Fitzpatrick*, 659 S.W.3d 745 (Ky. App. 2023), we found

there was no substantial evidence stalking had occurred where the petitioner "did not prove any specific two or more instances of behavior that would constitute stalking, as defined by KRS 508.130." *Id.* at 751. "The evidence [did] not rise to the level of a 'course of conduct' . . . which seriously alarm[ed], annoy[ed], intimidate[d], or harasse[d] the person and serve[d] no legitimate purpose and would cause a reasonable person to suffer substantial mental distress." *Id.* Again, referring to *Halloway*, we required proof of "two or more acts" that put the victim in reasonable fear of serious physical injury. *Id.* (quoting *Halloway*, 532 S.W.3d at 162).

In *Allen v. Eder*, 682 S.W.3d 32 (Ky. App. 2023), the majority found the evidence was sufficient to support the trial court's finding of stalking, even though the threat in that instance was only implicit. *Id.* at 37. However, in *Halloway*, *supra*, we reversed an IPO, concluding the conduct could not be construed as an implicit threat of physical harm. *Halloway*, 532 S.W.3d at 163. In *Strong v. Gary*, 673 S.W.3d 77, 80-81 (Ky. App. 2023), we affirmed the family court's denial of an IPO because the petitioner did not "prove two separate instances of stalking by a preponderance of the evidence." Stalking cases are difficult, as evidenced by the varied results.

However, our precedent requires a finding of a minimum of "two or more acts" to constitute stalking. *Strong*, 673 S.W.3d at 80. *See also Jones*, 617

S.W.3d at 426. Howell testified Smith had left other messages on her voicemail which she had not saved, but she did not describe any threats. She stated she had text messages on her phone, but she did not testify as to the content of those messages. She presented evidence of only the one threatening call.

Smith admitted she had made three phone calls to Howell over the past several months, but there was no evidence as to the content of those calls. There was no evidence presented of other threatening calls or texts of such a nature as to cause a reasonable person to be in fear of serious injury. In this case, Smith's voicemail message of February 4 included two explicit threats to Howell that if Smith were to see her out, she would "beat her ass" or "slap her face." The language throughout this message was harsh enough to have put Howell in reasonable fear of injury from Smith. Still, this does not constitute two separate events.

The only specific proven "threat" was this recorded phone call of February 4, 2024. Howell admitted she did not have dates or times of other activities, although she claimed that unwanted contact by Smith dated back to 2020 or 2021. She testified she had texts where Smith cussed her out, but there was no evidence presented of any threats other than this one phone call. While we do not substitute our opinion for the family court, the statute requires threatening action on more than one occasion over a defined period. KRS 508.130(2). There must be

a finding of a minimum of "two or more acts" to constitute stalking. *Taylor*, 659 S.W.3d at 751. Here, Howell did not provide evidence of any other threats that caused her, or would cause any reasonable person, to be in fear of serious injury. She did not present evidence to rise to a level of a "course of conduct" as required by KRS 508.130. While we certainly do not condone Smith's actions and language on February 4, 2024, the issuance of a three-year protective order holds serious ramifications that cannot be imposed without evidence of the elements required by the statutes.

For those reasons, we reverse the Jefferson Circuit Court and vacate the IPO entered herein.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Timothy Denison
Louisville, Kentucky